# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JAMAR JAMES EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:17-CV-387-TLS |
| ) | |
| E*TRADE SECURITIES LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Jamar James Evans, proceeding pro se, filed a Petition to Vacate or Set Aside a Financial Industry Regulatory Authority (FINRA) Arbitration Award [ECF No. 1] on September 7, 2017. On October 30, 2017, Defendant E*TRADE Securities LLC filed a Memorandum in Opposition [ECF No. 10] to the Petition as well as a Cross-Petition [ECF No. 9], asking the Court to confirm said arbitration award. The Plaintiff responded on November 20, 2017 [ECF No. 12], and the Defendant filed a Reply [ECF No. 15] on November 28, 2017. This issue is now fully briefed and ripe for review.

## BACKGROUND

The Defendant is an electronic, online discount brokerage that offers order execution services for low commission prices as compared to traditional broker-dealers. Most of the Defendant's customers conduct business through its website and never speak directly to a broker or customer service representative. Customers may also conduct business through the Defendant's mobile application. The Plaintiff has used the Defendant's services since March 2010, and he conducts most of his business via the mobile application.

When the Plaintiff opened his account, he was required to agree to the Defendant's Securities End-User License Agreement ("the User Agreement"), which provided in relevant part:

> **5. E*TRADE SECURITIES BROKERAGE SERVICES**
> I ACKNOWLEDGE THAT I ALONE AM RESPONSIBLE FOR DETERMINING THE SUITABILITY OF MY INVESTMENT CHOICES IN LIGHT OF MY PARTICULAR CIRCUMSTANCES. I UNDERSTAND THAT E*TRADE SECURITIES ASSUMES NO RESPONSIBILITY FOR SUCH DETERMINATION. **As a self-directed investor, I assume full responsibility for each and every transactions in or for my Account and for my own investment strategies and decisions. I understand and agree that E*TRADE Securities and its affiliates will have no liability whatsoever for the results of my investment strategies, transactions and decisions.**
>
> **(a) No Advice**
> Unless otherwise specified in writing, E*TRADE Securities does not and will not provide me with any legal, tax, estate planning or accounting advice or advice regarding the suitability, profitability or appropriateness for me of any security, investment, financial product, investment strategy or other matter. . . . I also acknowledge that E*TRADE Securities neither assumes responsibility for nor guarantees the accuracy, currency, completeness or usefulness of information, commentary, recommendations, advice, investment ideas or other materials that may be accessed by me through the Service. . . . If I choose to rely on such information, I do so solely at my own risk.
> . . .
>
> **6. TRADING PROVISIONS**
> **(a) Responsibility for Orders**
> All orders for the purchase and sale of Securities and/or Other Property given for my Account will be authorized by me and executed in reliance on my promise that an actual purchase or sale is intended. . . .

On October 6, 2016, the Plaintiff used the Defendant's mobile trading system to enter a number of orders relating to stock options. The Plaintiff claimed that there was an issue with the Defendant's mobile application that caused him to purchase options contracts with expiration dates of October 7, 2016, when he intended to purchase options contracts with expiration dates

of October 14, 2016 ("the Expiration Date Issue"). A customer service representative was able to help him fix this error, but the error resulted in some monetary losses.

The Plaintiff also claimed that, until October 18, 2016, the Defendant's website incorrectly indicated that Amazon, Inc., would announce its third quarter earnings on October 21, 2016, when, in fact, Amazon's earnings were not to be announced until 5:30 P.M. Eastern Standard Time on October 27, 2016. He argued that he purchased numerous options contracts with expiration dates of October 21, 2016, in reliance on the incorrectly posted date ("the Next Earnings Date issue"). He claimed that, if he had known that Amazon's third quarter earnings would not be posted until October 27, 2016, he would have purchased options contracts with expiration dates of October 28, 2016, and thereby avoided his monetary losses. The parties disputed how much of the Plaintiff's monetary losses were attributable to the actual purchase of the options contracts and how much were unavoidable based on the Plaintiff's choice to invest in Amazon.

On August 29, 2017, the parties appeared before an arbitration panel. The Plaintiff requested $60,500 in compensatory damages as well as $950,000 in punitive damages. The Defendant argued that it was not liable for any of the Plaintiff's losses based on the User Agreement, but that, in the event the Arbitrators found that the Defendant was liable under the User Agreement, the maximum losses the Plaintiff suffered were $2,358.77 due to the Expiration Date Issue and $739.39 due to the Next Earnings Date Issue. On September 1, 2017, the panel awarded compensatory damages to the Plaintiff:

> After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Defendant is liable for and shall pay to Claimant the sum of $3,100.00 in compensatory damages.

2. Other than forum fees, which are specified below, the parties shall each bear their own costs and expenses incurred in this matter.
3. Any and all claims for relief not specifically addressed herein, including punitive damages, are denied.

(Arbitration Award 2, ECF No. 10-3.)

## ANALYSIS

The Court's role in reviewing a petition to vacate an arbitration award is "severely limited." *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992). "[O]therwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated." *Id.* The Federal Arbitration Act ("FAA") enumerates the grounds on which a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The Plaintiff argues that the Arbitrators failed to interpret the User Agreement, failed to hear evidence pertinent and material to the controversy, and/or engaged in other misbehavior, corruption, or fraud that prejudiced the Plaintiff's rights.

### A. Interpretation of the Agreement

The Plaintiff first argues that the Arbitrators failed to interpret the User Agreement. "[T]he question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they

4

grossly erred in interpreting the contract; it is whether they interpreted the contract." *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011); *see also Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) (stating that the court "will not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement *at all*" (emphasis in original)); *Wise v. Wachovia Sec.*, 450 F.3d 265, 268, 269 (7th Cir. 2006) (finding "the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all, for only then were they exceeding the authority granted to them by the contract's arbitration clause") (internal citations omitted).

The Plaintiff argues that the arbitration award specifically references the Expiration Date Issue in the Case Summary but "does not mention any other arguments related to the plaintiff's causes of action," which demonstrates that the Arbitrators did not consider his claim regarding the Next Earnings Date Issue. (Pl. Rep. Br. 4.) However, the failure to specifically note the Next Earnings Date Issue in the Case Summary is not fatal to the award, especially when it is clear that both parties fully briefed and argued the Next Earnings Date Issue.[1] *See, e.g.*, *Rollins v. Prudential Ins. Co. of N.A.*, 10 F. App'x 510, 512 (9th Cir. 2001) (concluding that a "failure to list the [claim] specifically in the 'Case Summary' does not create a substantial ambiguity concerning the deposition of submitted claims" where the issue was raised in the claimant's initial filing, briefed by the parties, and presented at a hearing); *Remmey v. PaineWebber, Inc.*,

---

[1] The Court notes that although the Plaintiff points out multiple times that the Next Earnings Date Issue was the "paramount" or central issue in dispute, in his pre-hearing briefing the Plaintiff immediately followed that statement with a recitation of the Expiration Date Issue. All of the parties' pre-hearing submissions of record demonstrate that each fully argued both issues. Thus, the Plaintiff's argument that the Arbitrators' award reflected a decision on an issue that was not truly before panel is without merit.

5

32 F.3d 143, 150 (4th Cir. 1994) (finding "[t]hat the arbitrators' accompanying "Case Summary" did not mention all of [the claimant's] claims is of no moment" where award stated that "[a]ll Claims of the Claimant" were "dismissed in all respects"); *First Riverside Investors, L.P. v. Oppenheimer & Co., Inc.*, No. 99 CIV. 9313, 1999 WL 1225260, at *1 (S.D.N.Y. Dec. 22, 1999) (finding that failure to reference a claim in the "Case Summary" was "akin to a typographical or clerical error" because "the claim was repeatedly brought to the panel's attention, so they could hardly have overlooked it, and . . . the award itself expressly state[d] that it [was] 'in full and final settlement of all claims between the parties'"). Therefore, there is no reason for the Court to believe that the Arbitrators disregarded the Next Earnings Date Issue.

The Plaintiff also argues that, because the Arbitrators made no specific finding as to whether the Defendant was liable on the Next Earnings Date Issue, the Arbitrators did not interpret the User Agreement, or at least the indefiniteness of the Award makes it impossible to determine whether the Arbitrators interpreted the User Agreement. Rather, he asserts that "[a] denial of a specific claim in the award should be on the face of the award." (Pl. Rep. Br. 4.) However, arbitrators are not required to make separate findings as to each issue before them. *See, e.g.*, *Robots of Mars, Inc. v. Imax Corp.*, No. CV 11-3226, 2011 WL 13220323, at *2 (C.D. Cal. July 13, 2011) ("there is nothing indefinite about a single award encompassing the entire dispute between the parties. Nor was the issuance of a single award evidence that the arbitrator disregarded the contracts."); *Colletti v. Mesh*, 23 A.D.2d 245, 247 (N.Y. Sup. Ct. 1965) (finding that because "[o]n its face, the award specifically states that it was 'in full settlement of all claims and counterclaims submitted to arbitration,'" "[i]t was unnecessary for the arbitrators in their award specifically to mention the particular issues they had decided"); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Local 133 U.S.W., A.F.L.C.I.O. v. Fafnir Bearing Co.*, 201 A.2d 656, 657–58 (Conn. 1964) (upholding arbitration award where arbitrator

answered only one of two issues explicitly and generally denied the remainder of the grievance). Thus, the Arbitrators' failure to include specific findings as to each of the Plaintiff's claims does not demonstrate that the Award is indefinite or that the Arbitrators failed to interpret the User Agreement.

Rather, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotations omitted); *see also Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981) ("The arbitrators gave no reasons for their award, but they are not required to do so.") (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *Sullivan v. Lemoncello*, 36 F.3d 676, 683 (7th Cir. 1994) ("arbitrators have no obligation . . . to give their reasons for an award.") (quoting *United Steelworkers*, 363 U.S. at 598). Here, the Arbitrators interpreted the User Agreement in a manner that imposed liability on the Defendant despite the Defendant's argument that the language in the User Agreement released it from any liability whatsoever. The Seventh Circuit has stated that courts should "uphold an arbitral award unless 'there is no possible interpretive route to it so a non-contractual basis can be inferred." *Prostyakov*, 513 F.3d at 723 (quoting *Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39*, 43 F.3d 556, 562 (7th Cir. 2006)). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotations omitted).

In this case, the Court has no trouble discerning a "colorable justification" for the $3,100 arbitration award in favor of the Plaintiff. The Defendant submitted evidence that the Plaintiff lost no more than $2,358.77 due to the Expiration Date Issue and that no more than $739.39 was actually attributable to the Next Earnings Date Issue. If the Arbitrators found the Defendant's

7

evidence more compelling than the Plaintiff's evidence regarding his losses, the ultimate award of $3,100 could reflect an interpretation of the User Agreement that places liability on the Defendant for both alleged losses. The Court will not reconstruct the Arbitrators' reasoning, findings of fact, or conclusions of law, nor will it reweigh evidence and make its own determination regarding the merits of the Plaintiff's case or damages. Federal courts "will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview." *Prostyakov*, 513 F.3d at 723.

**B.     Failure to Hear Pertinent Evidence**

The Plaintiff appears to argue that the Arbitrators failed to hear all of the pertinent evidence. "Arbitrators are accorded great deference in their evidentiary determinations, and need not follow all the niceties observed by the federal courts." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013) (internal quotations omitted). "An arbitrator's refusal to receive relevant evidence, standing alone, does not warrant vacating an arbitration award; rather, the arbitrators' failure to consider pertinent evidence must have deprived the [the party] of a fundamentally fair hearing." *Mical v. Glick*, 851 F. App'x 568, 570 (7th Cir. 2014). "A fundamentally fair hearing 'requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias.'" *Hayne, Miller, & Farni, Inc. v. Flume*, 888 F. Supp. 949, 952 (E.D. Wis. 1995) (quoting *Bowles Financial Group v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994)).

There is no indication that the Arbitrators limited the Plaintiff's ability to present evidence, much less that such limitation deprived him of a fundamentally fair hearing. *See Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 268 (7th Cir. 1988)

8

(finding that because the Plaintiff "was never precluded from presenting whatever arguments and evidence he wished to present," he "received a fair arbitration proceeding"); *Wise*, 450 F.3d at 268 (refusing to vacate the award for failure to hear evidence where "the arbitrators did not limit the [Plaintiffs'] presentation of evidence). The Plaintiff admits that he was given the opportunity to "make an opening statement, cross-examine, and make a closing argument." (Pl. Rep. Br. 1.) More importantly, the Plaintiff does not point to any evidence that he was not permitted to offer. The standard for vacatur "typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue." *Mical*, 581 F. App'x at 570. Rather, the Plaintiff's argument seems to be that the Arbitrators did not give due weight to the evidence he did present, review of which is not within the purview of the Court. Therefore, the Plaintiff has not demonstrated that vacatur is appropriate on this ground.

### C. Corruption, Partiality, or Fraud

The Plaintiff has not pointed to any specific evidence that would substantiate his claims regarding corruption, partiality, or fraud. The Plaintiff asserts that during the hearing, the chairperson and the Defendant both began to "chastise" him about the examination of a witness and that it was "clear at that moment that defendant counsel and the chairperson had bonded." (Pl. Rep. Br. 1–2.) However, agreeing with one party regarding another party's behavior during an adversarial proceeding does not evidence partiality. Nevertheless, the Plaintiff argues that, due to this "bond," the fact that the Arbitrators' decision was handed down only two days after the hearing, and that the arbitration award granted the Plaintiff only $3,100, which corresponds with the Defendant's position regarding damages, the Court should infer corruption and fraud.[2]

---

[2] The Plaintiff also argues that, although he presented evidence that the language in the Agreement protected him from the Defendant's failure to post a correct earnings date, on cross examination, the only

9

However, neither a quick disposition nor an unfavorable award demonstrates fraud or corruption. *See Azroui v. E\*Trade Sec., LLC*, 499 F. App'x 606, 607 (7th Cir. 2013) (finding "mere appearance of bias" based on an adverse ruling is "not a valid ground for vacatur").

Moreover, to show partiality, the Plaintiff must present evidence of a "relationship between the arbitrator and the party's principal [that is] so intimate—personally, socially, professionally, or financially—as to cast serious doubt on the arbitrator's impartiality." *Health Servs. Mgmt.*, 975 F.2d at 1264; *see also Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980) ("The interest or bias of an arbitrator must be direct, definite, and capable or demonstration rather than remote, uncertain, or speculative." (internal quotation omitted)); *Batarseh v. Wireless Vision, LLC*, No. 2:07-CV-350, 2011 WL 854046, at *3 (N.D. Ind. Mar. 9, 2011) ("Although the Plaintiff points to a familiarity and argues it establishes partiality, he has failed to present any evidence of social, professional, or other types of relationships between the Defendant's counsel and the arbitrator . . . ."). The Plaintiff has produced no evidence that the Defendant and the Arbitrators had any prior relationship, much less one "so intimate" as to warrant an inference of partiality.

**D.    The Defendant's Petition to Confirm the Award**

Under Section 9 of the FAA, "at any time within one year after the award is made any party to the arbitration may apply . . . for an order confirming the award . . . ." 9 U.S.C. § 9. In

---

response the Defendant's Vice President of Operations gave regarding whether the Agreement's language protected the Plaintiff was "no." (Pl. Br. 6, ECF No. 1.) Thus, the Plaintiff argues, the Court may "infer that the arbitrators had had a corrupt motive or at least that they had exceeded the powers granted to them by the arbitration clause." *Wise*, 450 F.3d at 269. However, it seems clear that the Arbitrators did, in fact, agree with the Plaintiff on this point; they merely did not agree with the amount of damages that the Plaintiff asserted.

such a case, the Court "must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11" of the FAA. *Id.* Because the Court is not vacating, modifying, or correcting the award, the Court will confirm the award.

## CONCLUSION

For these reasons, the Court GRANTS the Defendant's Motions to Rule on Petition to Vacate [ECF Nos. 11, 16], DENIES the Plaintiff's Petition to Vacate or Set Aside FINRA Arbitration Award [ECF No. 1] and GRANTS the Defendant's Cross-Petition to Confirm the Arbitration Award and for Final Judgment [ECF No. 9].

SO ORDERED on December 13, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT